**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 07a0227n.06
Filed: March 28, 2007

No. 06-3196

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**BENHAM HABEB TOBEA SHASHA,**

     **Petitioner-Appellant,**

**v.**

**ALBERTO R. GONZALES, Attorney General
of the United States,**

     **Respondent-Appellee.**

_____/

**ON PETITION FOR REVIEW OF A
DECISION OF THE BOARD OF
IMMIGRATION APPEALS**

**BEFORE:**    **KENNEDY, BATCHELDER, and CLAY, Circuit Judges.**

     **CLAY, Circuit Judge.**  Petitioner Behnam Habeb Tobea Shasha appeals the Board of Immigration Appeal's ("BIA") order affirming the immigration judges's ("IJ") denial of Petitioner's application for asylum and withholding of removal. Petitioner argues that (1) the IJ's credibility determinations are not supported by substantial evidence; (2) the IJ's finding that Petitioner could not establish a well-founded fear of future persecution was not supported by substantial evidence; and (3) the IJ's finding that Petitioner was not entitled to withholding of removal was not supported by substantial evidence. We find no reversible error, and therefore **DENY** the petition for review.

**BACKGROUND**

No. 06-3196

On March 27, 2003, Petitioner arrived at the San Ysidro, California port of entry without any valid entry documentation. The former Immigration and Naturalization Service (now part of the Department of Homeland Security) charged that Petitioner was inadmissible pursuant to the Immigration and Nationality Act ("INA") § 212(a)(7)(A)(i)(I), 8 U.S.C. § 1182(a)(7)(A)(i)(I).[1] Petitioner conceded removability but filed an application for asylum and withholding of removal on November 4, 2003.

In his application, Petitioner alleged that he is an Iraqi citizen, and a member of the Chaldean Christian religion, born on January 14, 1974. According to Petitioner's application, while living in Iraq he suffered a series of misfortunes, which we will briefly recount. Petitioner studied at a technical institute in Mosul for three years after high school, but his graduation was delayed for one year because of pressure to join the Ba'ath Party, which he refused to do. Petitioner's father was killed by a shepherd in 1996, and when Petitioner tried to complain about this, he found out that the shepherd worked for a high-ranking Ba'ath Party member, and Petitioner's family was ordered to apologize to the shepherd. Petitioner was conscripted into the army in 1998, where an officer attempted to make Petitioner his servant because Petitioner was Christian. Petitioner refused and

---

[1] 8 U.S.C. § 1182(a)(7)(A)(i) states in pertinent part that:

(i) In general

Except as otherwise specifically provided in this chapter, any immigrant at the time of application for admission–

(I) who is not in possession of a valid unexpired immigrant visa, reentry permit, border crossing identification card, or other valid entry document required by this chapter, and a valid unexpired passport, or other suitable travel document, or document of identity and nationality if such document is required under the regulations issued by the Attorney General under section 1181(a) of this title . . . is inadmissible.

was jailed for twenty days, during which time he was beaten and tortured. In 2000, after being discharged from the army, Petitioner worked on a farm owned by his family, but the government interfered with Petitioner's ability to sell his crops. In 2001 Petitioner bought a taxi and worked in the city of Mosul, where he was attacked by a gang of thieves who stole his car; he subsequently discovered that the gang of thieves were in reality government security personnel. In 2002, the Ba'ath Party forced Petitioner to donate money to build a mosque. In late 2002, due to religious persecution, Petitioner left Iraq and traveled to the United States after traveling extensively through Europe and Latin America.

After Petitioner successfully moved for a change of venue, an immigration judge held a hearing on Petitioner's application on August 5, 2004. Petitioner's testimony at the hearing, though generally consistent with the facts in his application, also included several significant discrepancies, the most important of which are discussed below. At the conclusion of the hearing the IJ ruled that Petitioner's testimony was not credible. The IJ further concluded that, even if he were to believe Petitioner's testimony, the allegations did not rise to the level of past persecution. Moreover, to the extent that Petitioner had been persecuted, the IJ held that the government had demonstrated that there had been a fundamental change in Iraq that rebutted any presumption of a well-founded fear of future persecution. The IJ based this conclusion on the country reports proffered by Petitioner and the government, which to the IJ did not demonstrate a pattern or practice of persecution against Christians, but instead demonstrated that Iraq was a dangerous place for all of its inhabitants. For this reason, the IJ also held that Petitioner could not establish a well-founded fear of future persecution, either individually or as a member of a statutorily protected group. The IJ additionally

held that Petitioner was not eligible for withholding of removal because he could not establish that it was more likely than not that his life or freedom would be threatened for a statutorily enumerated reason upon his return to Iraq. Finally, the IJ concluded that Petitioner could not show that it was more likely than not that he would be tortured, and was therefore ineligible for relief under the Convention Against Torture.

The BIA affirmed in a per curiam opinion on January 19, 2006. Petitioner filed a timely petition for review on February 10, 2006.

## DISCUSSION

### A. Standard of Review

This Court reviews the BIA's "factual determination of whether a petitioner qualifies as a refugee under a 'substantial evidence' test." *Gilaj v. Gonzales*, 408 F.3d 275, 283 (6th Cir. 2005) (citing *Yu v. Ashcroft*, 364 F.3d 700, 702 (6th Cir. 2004)). The BIA's decision "must be upheld if 'supported by reasonable, substantial, and probative evidence on the record considered as a whole.'" *INS v. Elias-Zacarias*, 502 U.S. 478, 481 (1992). Accordingly, this Court reverses the BIA's factual findings only where the evidence "not only supports a contrary conclusion, but indeed *compels* it." *Klawitter v. INS*, 970 F.2d 149, 152 (6th Cir. 1992) (citing *Elias-Zacarias*, 502 U.S. at 481); *see also Ouda v. INS*, 324 F.3d 445, 451 (6th Cir. 2003). To the extent that the BIA adopts the IJ's decision and its rationale without further comment, this Court reviews the IJ's decision as the final agency decision. *Denko v. INS*, 351 F.3d 717, 726 (6th Cir. 2003).

### B. Petitioner Cannot Demonstrate Eligibility for Asylum

Under section 208(b)(1) of the INA, the Attorney General has discretion to grant asylum to an alien who qualifies as a "refugee" under 8 U.S.C. § 1101(a)(42)(A). 8 U.S.C. § 1158(b)(1). Section 1101(a)(42)(A) defines "refugee" to include persons "unable or unwilling to return" to their home country "because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." The burden of establishing eligibility is on the applicant, who must demonstrate "that he or she qualifies as a refugee 'either because he has suffered actual past persecution or because he has a well-founded fear of future persecution.'" *Mikhailevitch v. INS*, 146 F.3d 384, 389 (6th Cir. 1998) (quoting 8 C.F.R. §§ 208.13(a)-(b)). If an applicant demonstrates that he has suffered past persecution, that creates a rebuttable presumption of a well-founded fear of future persecution. *Ouda*, 324 F.3d at 452. This presumption can be rebutted if the government demonstrates, by a preponderance of the evidence, that country conditions have changed such that the applicant no longer has a well-founded fear of persecution upon return. *Id.* An applicant can also demonstrate a well-founded fear of future persecution by proving that "there is a reasonable possibility he or she would be singled out individually for persecution" or that there "is a pattern or practice . . . of persecution of a group of persons similarly situated to the applicant on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 C.F.R. § 1208.13(b)(2)(iii).

To demonstrate persecution, "[t]he applicant's testimony, *if credible*, 'may be sufficient to sustain the burden of proof without corroboration.'" *Mikhailevitch*, 146 F.3d at 389 (emphasis added) (quoting 8 C.F.R. § 208.13(a)). The IJ found that Petitioner's testimony was not credible, a finding which Petitioner challenges on appeal. We hold that the IJ's determination is supported

by substantial evidence. The IJ cited numerous defects in Petitioner's testimony, including, for example, the fact that Petitioner purchased land with his father in 1999 despite the fact that his application alleged that his father was killed in 1996, and the fact that Petitioner testified inconsistently as to when he discovered that the persons who stole his taxi cab were associated with the government. Petitioner also submitted an apparently false birth and baptismal certificate written in English, the submission of which adversely affects his credibility. *See Sterkaj v. Gonzales*, 439 F.3d 273, 277 (6th Cir. 2006). In sum, the evidence does not compel a finding that Petitioner was credible. *See Klawitter v. INS*, 970 F.2d at 152.

Moreover, the IJ's factual determination that country conditions have changed such that Petitioner could no longer have a well-founded fear of persecution is also supported by substantial evidence.[2] This Court has consistently held that substantial evidence supports the conclusion that country reports detailing the regime change in Iraq rebut any presumption of a well-founded fear of persecution based on past persecution on account of Christianity. *See Aoraha v. Gonzales*, Nos. 05-4270 & 05-4272, 2006 WL 3749630, at *2 (6th Cir. Dec. 20, 2006) (unpublished) (persecution with respect to Iraqi Chaldean Christians); *Al- Shabee v. Gonzales*, No. 05-3687, 188 F. App'x 333, 338 (6th Cir. Oct. 4, 2006) (unpublished) (same); *Toma v. Gonzales*, No. 04-4310, 179 F. App'x 320, 323-24 (6th Cir. May 4, 2006) (unpublished) (same); *Khora v. Gonzales*, No. 04-4182, 172 F. App'x 634, 638 (6th Cir. Feb. 10, 2006) (unpublished) (same). Nothing in Petitioner's case dictates a contrary result.

---

[2] This conclusion makes it unnecessary for us to consider the propriety of the IJ's finding that Petitioner's allegations did not constitute past persecution.

Likewise, the IJ's conclusion that Petitioner could not demonstrate a reasonable possibility of persecution individually or as a member of a statutorily protected class is also supported by substantial evidence. The IJ concluded that Iraq, although dangerous for all, was not especially threatening to Chaldean Christians; we have previously held that substantial evidence supports this finding. *See Toma*,179 F. App'x at 324 ("While Iraq is undoubtedly violent, the threat of violence that Toma will face upon her return does not constitute persecution."); *Khora*, 172 F. App'x at 639 ("The evidence that Khora entered into the record points to a general fear, during the spring of 2003, in the Iraqi Christian community concerning the emergence of Islamist political factions. Although a few of the articles do note harassment of Christians in Iraq by Muslim citizens, these reports fall short of establishing a reasonable probability of serious harm to Chaldean Christians in Iraq following the removal of the Hussein government."). The IJ's conclusion that Petitioner is not entitled to asylum is supported by substantial evidence.

## C.     Petitioner Cannot Establish Eligibility for Withholding of Removal

Under section 1231(b)(3)(A) of Title 8 of the United States Code, "the Attorney General may not remove an alien to a country if the Attorney General decides that the alien's life or freedom would be threatened in that country because of the alien's race, religion, nationality, membership in a particular social group, or political opinion." Because this standard is more stringent than that needed to establish a well-founded fear of future persecution, *Mikhailevitch*, 146 F.3d at 391, the conclusion that Petitioner cannot establish a well-founded fear of future persecution is fatal to his claim for withholding of removal.

**CONCLUSION**

For the foregoing reasons, we **DENY** the petition for review.