RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206
File Name: 05a0056p.06

# UNITED STATES COURTS OF APPEALS

## FOR THE SIXTH CIRCUIT

---

GANNA ROMANIVNA DOROSH,

*Petitioner,*

*v.*

No. 03-3246

JOHN ASHCROFT, Attorney General; IMMIGRATION AND
NATURALIZATION SERVICE,

*Respondents.*

---

On Appeal from the Immigration and Naturalization Service.
No. A75 246 587.

Argued: October 28, 2004

Decided and Filed: December 20, 2004[*]

Before: SUHRHEINRICH and BATCHELDER, Circuit Judges; McKEAGUE, District Judge.[**]

---

**COUNSEL**

**ARGUED:** Scott E. Bratton, MARGARET WONG & ASSOCIATES, Cleveland, Ohio, for Petitioner. Paul Fiorino, U.S. DEPARTMENT OF JUSTICE, OFFICE OF IMMIGRATION LITIGATION, Washington, D.C., for Respondents. **ON BRIEF:** Scott E. Bratton, MARGARET WONG & ASSOCIATES, Cleveland, Ohio, for Petitioner. Timothy P. McIlmail, Jeffrey J. Bernstein, U.S. DEPARTMENT OF JUSTICE, OFFICE OF IMMIGRATION LITIGATION, Washington, D.C., for Respondents.

---

[*] This decision was originally issued as an "unpublished decision" filed on December 20, 2004. On January 21, 2005, the court designated the opinion as one recommended for full-text publication.

[**] The Honorable David W. McKeague, United States District Judge for the Western District of Michigan, sitting by designation.

---

**OPINION**

---

SUHRHEINRICH, Circuit Judge. Petitioner Ganna Romanivna Dorosh ("Petitioner") appeals from the decision of the Board of Immigration Appeals ("BIA") denying her applications for asylum and withholding of removal. For the reasons that follow, we **AFFIRM** the decision of the BIA.

**I.**

Petitioner grew up in West Ukraine with her Jewish mother and her Catholic father. In 1980, her father was murdered by his co-workers, presumably because he married a Jewish woman. In 1982, her mother was allegedly imprisoned for speaking out about anti-Semitism. Petitioner lived temporarily at an orphanage, where she claims she was humiliated and punished for being Jewish.

Petitioner describes other incidents of anti-Semitism. She claims she was arrested and detained for a week in 1995 because her mother had participated in a Jewish-rights' demonstration. Police allegedly brutalized her and tried to force her to sign a document denouncing her mother's activities in fighting anti-Semitism. Shortly thereafter, the apartment where she and her mother had been living was ransacked. Also in 1995, a speeding car tried to run her down.

On April 4, 1996, Petitioner entered the United States as a non-immigrant for pleasure, remaining beyond the time permitted by the Immigration and Naturalization Service ("INS"). On May 3, 1997, the INS commenced removal proceedings against her.

Petitioner applied for asylum pursuant to 8 U.S.C. § 1158(a), testifying that she feared she would suffer persecution and torture if she returned to the Ukraine. Since her application for asylum was made after the institution of removal proceedings, it was also considered a request for withholding of removal under §241(b)(3) of the Immigration and Naturalization Act ("INA"). At her hearing with the Immigration Judge ("IJ"), Petitioner requested that the court consider her application for withholding of removal pursuant to the Convention against Torture. In the alternative, she also applied for the privilege of voluntary departure from the United States in lieu of deportation.

On March 24, 1999, the IJ denied Petitioner's applications for asylum, withholding of removal, and relief under the Convention Against Torture, finding she was not credible and did not meet her burden of proving eligibility for any form of relief. The IJ's credibility determination was based on Petitioner's demeanor, implausible accounts, internal inconsistencies, and inconsistencies between her application and her testimony. Petitioner appealed the decision to the BIA.

On April 21, 1999, the BIA reversed the IJ's adverse credibility finding, determining that Petitioner's testimony was adequately consistent both internally and with her written application. The BIA agreed with the IJ, however, that Petitioner had not met her burden of proving eligibility for relief because she did not provide sufficient corroboration of her claims. On March 27, 2003, this Court granted Petitioner's motion to stay the order of removal pending disposition of this appeal.

**II.**

In order to reverse the BIA's factual determination, this Court must find that "the evidence not only supports a contrary conclusion, but indeed *compels* it." *Klawitter v. INS*, 970 F.2d 149, 152 (6th Cir. 1992) (quoting *Elias-Zacarias*, 502 U.S. at 481, n.1 (1992)) (emphasis in the original). By contrast, when this Court reviews the BIA's "application of legal principles to undisputed facts, rather than its underlying determination of those facts or its interpretation of its governing statutes, the review of both the BIA's

asylum and withholding of deportation determinations is *de novo*." *Diallo v. INS*, 232 F.3d 279, 287 (2d Cir. 2000).

Petitioner's arguments on appeal are three-fold. First, she claims that the BIA's reversal of the IJ's adverse credibility ruling is, in itself, a ruling that she is credible. Second, she argues that since she was credible, the BIA judge erred in requiring corroboration. Third, she claims that even if the BIA can require corroboration, she met her burden of proof by producing some evidence and an adequate explanation for not producing further evidence.

According to INS regulations "[t]he testimony of the applicant, if credible, may be sufficient to sustain the burden of proof without corroboration." 8 C.F.R. §§ 208.13(a), 208.16(b). The BIA has interpreted this permissive language to mean that "where an alien's testimony is the only evidence available, it can suffice where [it] is believable, consistent, and sufficiently detailed to provide a plausible and coherent account of the basis of the alien's alleged fear." *In re M-D-*, 21 I. & N. Dec. 1180, 1182 (BIA 1998) (citing *Matter of Dass*, 20 I. & N. Dec. 120, 124 (BIA 1989)). However, the BIA has also stated that "where it is reasonable to expect corroborating evidence for certain alleged facts pertaining to the specifics of an applicant's claim, such evidence should be provided . . . . The absence of such corroborating evidence can lead to a finding that an applicant has failed to meet her burden of proof." *In re S-M-J-*, 21 I. & N. Dec. 722, 724-26 (BIA 1997).

As explained below, we need only decide Petitioner's second and third arguments to dispose of this matter. However, a brief comment about Petitioner's first argument is helpful. Petitioner argues that the BIA found her credible. However, the BIA merely stated that there were no inconsistencies between her oral testimony and her written statement. It did not indicate whether Petitioner was believable or whether her story provided adequate detail to support her application. Under BIA rulings, credibility encompasses not just consistency but also plausibility and sufficient detail. *See, e.g., In re M-D-*, 21 I. & N. Dec. 1180, 1182 (BIA 1998). The BIA required more than just consistency between her oral testimony and her written application. It required corroborative evidence for virtually every significant instance of persecution to which Petitioner testified. We now turn to her second argument regarding the BIA corroboration rule. If we agree with the BIA, we do not need to reach the first issue; we need only determine whether the BIA's corroboration requirement is correct.

Petitioner asks this Court to adopt the Ninth Circuit's view on corroboration, which expressly rejects the BIA corroboration rule in cases in which testimony of an applicant is credible although it would permit the application of the rule where the applicant's credibility is questioned or adversely determined. *See Ladha v. INS*, 215 F.3d 889, 901 (9th Cir. 2000) (holding that "an alien's testimony, if unrefuted and credible, direct, and specific, is sufficient to establish the facts testified without the need for any corroboration").

We are not persuaded by the Ninth Circuit view. We decide instead to join the Second and Third Circuits in expressly approving the BIA's corroboration rule. *See Guan Shan Liao v. U.S. Dep't. of Justice*, 293 F.3d 61, 71 (2d Cir. 2002) (citing *Diallo* at 232 F.3d at 285); *Kayembe v. Ashcroft*, 334 F.3d 231, 238 (3d Cir. 2003) (citing *Abdulai*, 239 F.3d at 554); *see also Capric*, 355 F.3d 1075,1086 n.4 (7th Cir. 2004) (noting the rule and the Ninth Circuit's disapproval of it but neither accepting nor rejecting it). Indeed, this Court has repeatedly emphasized the importance of corroborating evidence. S*ee, e.g., Micakovic v. Ashcroft*, No. 02-4201, 2003 WL 23156635, at *2 (6th Cir. Dec. 16, 2003) (holding that even if he was credible, the applicant could be reasonably expected to corroborate his claim that government officials in Kosovo attempted to force him into military service). We therefore conclude that the BIA corroboration rule does not contradict the language of 8 C.F.R. §§ 208.13(a) and 208.16(b). Neither does it place unreasonable demands on an applicant since supporting documentation must be provided only if it "is of the type that would normally be created or available in the particular country and is accessible to the alien, such as through friends, relatives, or co-workers." *See Perkovic v. INS*, 33 F.3d 615, 726 (6th Cir. 1994).

Applying the BIA rule, we address Petitioner's third argument. Petitioner claims she offered an adequate explanation for the proof she lacked in that her letters did not reach her mother, her mother had no telephone and had to go to the post office to call her, and any attempts to talk about Petitioner's asylum case or obtain affidavits from others would have jeopardized her mother's safety. Similarly, she indicates that contacting girlfriends could put them in danger. Petitioner also notes that although she provided both the 1996 *Country Reports on Human Rights Practice* and the June 1997 *Profile of Asylum Claims and Country Conditions*, the BIA did not address them.

We agree with the BIA that corroborative evidence of Petitioner's past persecution and the fear of future persecution could be "reasonably expected" and that Petitioner's explanation for its absence was inadequate. Petitioner was in contact with her mother in the Ukraine, yet, as the BIA noted, she produced no affidavit from her mother corroborating the ill treatment of her daughter. While contact may not have been convenient, regular, or private, it was sufficient to have allowed Petitioner to obtain a previous letter from her mother in which her mother documented her own mistreatment. Petitioner could have requested a letter in a manner that minimized any risk of sensitive statements being overheard. The BIA also noted that Petitioner did not retain letters from her girlfriends in the Ukraine documenting the danger Petitioner would face if she returned. It was reasonable for the BIA to expect Petitioner to have retained these letters, especially since she offered no special circumstances to explain their absence. Finally, we note that Petitioner had ample time between her notice of removal and her hearing in which to have obtained documentation.

As to the BIA's failure to address the country reports, our review of these reports confirms that the BIA could reasonably expect Petitioner to provide the requested letter from her mother because discrimination against Jews is not widespread. The Ukraine governments have condemned anti-Semitism and there has been a resurgence of Jewish religious and cultural institutions. Petitioner has not proved past persecution or a well-founded fear of persecution. An asylum applicant must first prove statutory eligibility by "establishing a well-founded fear of persecution" and then show that the IJ should exercise discretion to grant asylum. *Klawitter*, 970 F.2d at 151 (citing *Rodriguez-Rivera v. INS*, 848 F.2d 998, 1001 (9th Cir. 1988)). An application for asylum is also considered a request for withholding of deportation, *id,* adjudicated under a "clear probability of persecution" standard. *INS v. Stevic*, 467 U.S. 407, 430 (1984).

We conclude that there is ample evidence to support the BIA's decision to deny Petitioner's claims. The test is not whether this Court might have decided differently but whether this Court is compelled to conclude that the BIA erred. The record does not compel such a conclusion. Petitioner did not meet her burden of proof necessary for a granting of asylum because she neither corroborated her testimony with reasonably expected documentation nor provided an explanation for its absence. Since she did not meet the burden of proof for asylum, she cannot meet the clear probability standard necessary for a granting of withholding of removal.

## III.

For the reasons mentioned above, we **AFFIRM** the BIA's denial of Petitioner's application for asylum and withholding of deportation.